# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BURLINGTON INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>ADRENIA VARGAS URENA, et al.,<br><br>    Defendants. | Case No. 1:25-cv-00956-SAB<br><br>ORDER DENYING DEFENDANTS' MOTION TO STAY THIS ACTION<br><br>(ECF No. 15) |

Before the Court is a motion to stay this action pending the completion of another related action pending in state court, filed by Defendants Adreina Vargas Urena, Jose Alejandro Hernandez, and H Bros Enterprises, Inc. (collectively, "Defendants"). The Court held a hearing on this matter on November 12, 2025. (ECF No. 21.) Yas-Banoo Omidi, Esq. appeared on behalf of Plaintiff. Patrick D. Toole, Esq. appeared on behalf of Defendants. Upon reviewing motion, the underlying papers, and the arguments made at the hearing, the Court will deny Defendants' motion.

## I.

## BACKGROUND

This is a case concerns Plaintiff The Burlington Insurance Company's ("Plaintiff") alleged contractual obligation to defend and indemnity Defendants in an underlying negligence action pending in California Superior Court, Madera County. (See ECF No. 52-2, p. 5.) Essentially,

Plaintiff issued a Commercial General Liability Policy covering Defendants, and in this action, Plaintiff seeks a judicial declaration that it has no duty to defend or indemnify any Defendant, as well as seeking recoupment of costs. The Court will briefly discuss the underlying action and the policy at issue.

### A.  The Underlying Action

As alleged in the complaint in Superior Court, the plaintiffs in the underlying action are relatives of the deceased individual, Francisco Muro (the "decedent"), and they are entitled to his property by intestate succession. (ECF No. 1, Exh. B, ¶¶ 1-3.)[1] Decedent was an unlicensed handyman. (Id. at ¶ 5.) Defendant Adreina Vargas Urena[2] owned, operated, possessed, and otherwise controlled real property in Madera, California (the "Premises") and is the Chief Operating Officer of Defendant H Bros Enterprises, Inc., which is a corporation engaged in excavation and commercial recycling and operates a commercial recycling plant under the name El Toro. (Id. at ¶¶ 6, 8.)

In August of 2024, and on behalf or Urena and H Bros Enterprises, Inc., Defendant Jose Alejandro Hernandez engaged decedent on an undocumented, cash-payment-only basis to construct on the Premises a prefabricated building that was to be used by El Toro and Urena as a secondary/additional recycling facility (the "Project"). (Id. at ¶¶ 9, 15, 17.) Defendants exercised authority and control over decedent's work and knew he was unlicensed and did not have the required safety equipment or formal training to perform the Project in a safe manner. (Id. at ¶¶ 10, 16, 18, 20.)

On September 24, 2024, Hernandez asked decedent to install the sheet metal roof of the prefabricated building. (Id. at ¶ 23). At that time, the foundation was prepped to pour concrete and had exposed and uncapped rebar. (Id. at ¶ 25.) Decedent climbed onto the steel beams of the

---

[1] A court may take judicial notice of a fact not subject to reasonable dispute, either because the fact is generally known within the territorial jurisdiction of the trial court or because the fact is capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Courts may also take judicial notice of undisputed matters of public record, Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001), including documents filed in federal or state courts. Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012). The Court takes judicial notice of the complaint filed in the underlying action in California Superior Court, Madera County.

[2] Defendants this action are also defendants in the underlying action.

2

roof, attempted to place the sheet metal, lost his balance, and fell onto the exposed, uncapped rebar below, striking his head. (Id. at ¶ 26.) Decedent was pronounced dead on the scene. (Id.)

The plaintiffs alleged that Defendants knew or should have known that installing the roof posed a safety hazard yet failed to provide safety equipment to minimize the risk of falling or finish the concrete foundation so the uncapped, exposed rebar would not pose a heightened risk or serious injury or death for anyone performing work and falling from the top of the structure. (Id. at ¶¶ 27-29.) According to the plaintiffs, Defendants breached these duties, and decedent died as a direct and proximate result of those breaches. (Id. at ¶¶ 31-36.)

Based on the foregoing, the complaint in the underlying action brings a single cause of action for negligence and seeks general damages, special damages, costs of suit and disbursements, and such other relief as the Court deems just and proper. (Id. at ¶¶ 30-36 and Prayer for Relief.)

**B.   The Instant Insurance Policy**

As relevant here, instant insurance policy contains the following provisions:

> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> * * *
>
> **AMENDMENT – EMPLOYER'S LIABILITY EXCLUSION**
> This endorsement modifies insurance provided under the following:
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**
> **A.   Exclusion e.**
> This insurance does not apply to:
>
> **e.  Employer's Liability**
>
> "Bodily injury" to:
> (**1**) Any "employee", "leased worker", "temporary worker",

3

"volunteer worker", statutory "employee", casual worker, or seasonal worker of any insured, or a person hired to do work for or on behalf of any insured or tenant of any insured, arising out of and in the course of:
 **(a)** Employment by any insured; or
 **(b)** Directly or indirectly performing duties related to the conduct of any insured's business; or
**(2)** The spouse, child, parent, brother or sister of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, or seasonal worker as a consequence of Paragraph **(1)** above.
This exclusion applies:
**1.** Regardless of where the:
 **a.** Services are performed; or
 **b.** "Bodily injury" occurs;
**2.** Whether any insured may be liable as an employer or in any other capacity; and
**3.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(ECF No. 15-2, pp. 33, 87; see ECF No. 1, Exh. A.)[3]

LIMITATION OF COVERAGE TO DESIGNATED OPERATIONS OF COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| | |
|---|---|
| Description of Designated Operation(s): | Orchard and Vineyard Removal, Scrap Metal Removal and Delivery Services |
| Description of Designated Completed Operation(s): | Orchard and Vineyard Removal, Scrap Metal Removal and Delivery Services |
| Specific Location (if applicable): | |

A. This insurance applies only to "bodily injury", "property damage" or "personal and advertising injury" caused by or arising,

---

[3] "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). "If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them." Lee, 250 F.3d at 688 (cleaned up). The Court incorporates the instant policy into the complaint.

4

>directly or indirectly, in whole or in part out of the operations and/or completed operations described in the Schedule of this endorsement.
>
>If a specific "location" is designated in the Schedule of this endorsement, this insurance applies only to the described operations and/or completed operations conducted at that "location".
>
>B. For the purposes of this endorsement, the following is added to the Definitions section:
>
>"Location" means premises involving the same or connecting lots or premises whose connection is interrupted only by a street, roadway, waterway, or right-of-way of a railroad.

(ECF No. 15-2, p. 53; see ECF No. 1, Exh. A.)

### C. The Instant Action

Defendants tendered the underlying action to Plaintiff, their insurance carrier. Recently, Plaintiff advised Defendants that it will defend Defendants Urena and Hernandez in the underlying action but not H Bros. Enterprises, Inc. (See generally ECF No. 15-2, pp. 102-19.) Plaintiff added that it agreed to defend Urena and Hernandez only under a reservation of rights, as it simultaneously seeks declaratory relief in the instant action that it does not owe a duty to defend or a duty to indemnify any of the Defendants. In so basing their denial and this action, Plaintiff has taken the position that,

>coverage under the Policy for the Underlying Action is barred: (1) under Policy exclusion e. for "Employer's Liability" as modified by the endorsement BG-G-119 (11/17) "Definition – Employee", to the extent Decedent was HBros Ag's employee; and (2) under endorsement IFG-G-0509 (11/21) "Limitation of Coverage to Designated Operations of Completed Operations", to the extent construction of the Project on an unscheduled location was not related to the designated operations of "Orchard and Vineyard Removal, Scrap Metal Removal and Delivery Services."

(ECF No. 15-2, p. 118.)

On August 4, 2025, Plaintiff commenced this action, bringing five claims. (ECF No. 1.) The first, second, fourth, and fifth claims seek a declaratory judgment that Plaintiff has no duty to defend or indemnify Defendants with respect to the underlying action based on the "Employer Liability Exclusion," the "Designated Operations Endorsement," and its position that H Bros. Enterprises, Inc. is not an insured under the policy. (Id. at ¶¶ 28, 33, 40, 45, 50.) The third claim

is for recoupment of insurer payments; in other words, should Plaintiff have neither a duty to defend or indemnify, it seeks to recover such costs it has expended in the underlying action. (Id. at ¶¶ 38-43.)  The parties have consented to the jurisdiction of a United States Magistrate Judge for all further proceedings in this action, including trial and entry of judgment, pursuant to 28 U.S.C. 636(c)(1).  (ECF Nos. 22, 23, 24.)

On September 29, 2025, Defendants moved to stay this action pending final adjudication of the underlying action in state court (ECF No. 15), which Defendants proffer is set for trial in April 2026.  (ECF No. 20, p. 2.)  The motion has been fully briefed (ECF Nos. 18, 20), and on November 12, 2025, the Court held a hearing and heard argument from both parties.  (ECF No. 21.)

## II.

## LEGAL STANDARD

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket."  Clinton v. Jones, 520 U.S. 681, 706 (1997), citing Landis v. North America Co., 299 U.S. 248, 254 (1936).  A stay is discretionary and the "party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Nken v. Holder, 556 U.S. 418, 433-34 (2009).  "Generally, stays should not be indefinite in nature." Dependable Highway Exp., Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066-67 (9th Cir. 2007). Instead, district courts should "balance the length of any stay against the strength of the justification given for it." Young v. I.N.S., 208 F.3d 1116, 1119 (9th Cir. 2000) (discussing that if a stay is especially long or its term is indefinite, a greater showing is required to justify it).

## III.

## DISCUSSION AND ANALYSIS

From the outset, the parties disagree on which specific legal standard applies to this type of case—namely whether the principles outlined in Brillhart-Dizol or Colorado River applies. Because this inquiry is central to how to dispose of this motion, the Court addresses this issue from the outset, and then, based on that determination, the Court will take the parties' relevant arguments in turn.

6

A. **<u>Colorado River Applies</u>**

The principal argument between the parties on how to determine which legal standard applies comes down to whether this case is primarily declaratory in nature or whether Plaintiff's third cause of action, recoupment of insurer payments, is sufficiently independent. If this action is primarily declaratory in nature, <u>Brillhart-Dizol</u> applies; if the recoupment of insurer payments is independent, then <u>Colorado River</u> applies. Specifically, Plaintiff argues that its recoupment claim is a common-law claim, and therefore, the Court must retain jurisdiction. (ECF No. 18, p. 12.) Indeed, Plaintiff insists that in a "mixed" action, that the principles of <u>Colorado River</u> apply and mandate that the Court deny Defendants' motion. (<u>Id.</u> at pp. 12-13.) In Defendants' reply, they assert that Plaintiff's contention about mixed cases is glossed over, and the precedent cited is inapposite to the instant matter. (ECF No. 20, pp. 2-5.) Thereafter, Defendants reiterate how, in their view, the <u>Brillhart-Dizol</u> factors support entering a stay. (Id. at pp. 5-7.) The Court agrees with Plaintiff.

Under the Declaratory Judgment Act, a district court may decline to exercise jurisdiction over a declaratory action even though subject matter jurisdiction is otherwise proper. <u>See</u> 28 U.S.C. § 2201(a); <u>Brillhart v. Excess Ins. Co. of America</u>, 316 U.S. 491, 494 (1942). In enacting the Declaratory Judgment Act, "Congress . . . created an opportunity, rather than a duty, [for a district court] to grant a new form of relief to qualifying litigants." <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 288 (1995). In assessing actions for declaratory judgment, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." <u>Snodgrass v. Provident Life and Acc. Ins. Co.</u>, 147 F.3d 1163, 1166 (9th Cir. 1998), quoting <u>Wilton</u>, 525 U.S. at 288.

In general, "[courts in the Ninth Circuit] have applied the principle that 'when other claims are joined with an action for declaratory relief (*e.g.*, bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief.'" <u>United Nat. Ins. Co v. R&D Latex Crop.</u>, 242 F.3d 1102, 1112 (9th Cir. 2001), quoting <u>Government Employees Ins. Co. v. Dizol</u>, 133 F.3d 1220, 1225 (9th Cir. 1998). The Ninth Circuit has observed that

"[m]ost cases in this field involve actions that are purely or primarily declaratory in nature: typically, claims in which an insurance company seeks a declaration that it has no duty to defend a third party in an underlying dispute." Snodgrass, 147 F.3d at 1167. However, "[c]laims that exist independent of the request for a declaration are not subject to the Declaratory Judgment Act's discretionary jurisdictional rule." Id., citing Maryland Cas. Co. v. Knight, 96 F.3d 1284, 1289 & n. 6 (9th Cir.1996). Thus, these claims invoke the "virtually unflagging" obligation of the district court to exercise jurisdiction. First State Ins. Co. v. Callan Associates, Inc., 113 F.3d 161, 163 (9th Cir. 1997), quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).

In order to make this assessment, the Ninth Circuit has given the following framework:

> The appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case.

Snodgrass, 147 F.3d at 1167-68. Should a court determine that an action is primarily declaratory in nature, a court should then employ the Brillhart factors as "the philosophic touchstone." Dizol, 133 F.3d at 1125. However, if a claim is sufficiently independent, Colorado River applies.

Thus, the Court begins with the application of how to determine whether a case is primarily declaratory in nature or not. Snodgrass, 147 F.3d at 1167-68. In other words, the Court will look to whether Plaintiff's recoupment claim "would continue to exist if the request for a declaration simply dropped from the case." Id.

In the complaint, Plaintiff alleges that it has incurred and will continue to incur sums on the defense of Defendants Urena and Hernandez in the underlying action. (ECF No. 1., ¶ 39.) Plaintiff alleges that the relevant insurance policy has no coverage for any liability that could be imposed on Urena and/or Hernandez in the underlying action, and Plaintiff continues, discussing its most relevant defense. (Id. at ¶ 40.) Plaintiff then alleges "[s]ums incurred by [Plaintiff] have been incurred with respect to claims that are in fact not covered under the terms of the Policy." (Id. at ¶ 41.) And to the extent Plaintiff has incurred sums, Plaintiff reserved its right to recover

such sums. (Id. at ¶ 42.) "[Plaintiff] is entitled to a judgment reimbursing it for all sums incurred by it on the defense or indemnity for uncovered claims, in an amount to be proven at trial." (Id. at ¶ 43.) For their part, Defendants note that in the complaint, Plaintiff has premised diversity jurisdiction on the "applicable [p]olicy limits affected by the claims for declaratory relief are $1 million per occurrence. The [plaintiffs in the underlying action] demands . . . exceed $1 million. Additionally, [Plaintiff] seeks monetary damages in the amount of its defense costs incurred for the [u]nderlying [a]ction." (Id. at ¶ 8.)

       Defendants argue that it does not appear that Plaintiff's recoupment claim satisfies the $75,000 threshold for diversity jurisdiction on its own. Though the parties are diverse, the policy limits of up to $1 million relate to the declaratory claims. The monetary damages are in an unspecified amount and relate to the Plaintiff's defense costs incurred in the underlying action. Therefore, as pleaded, Defendants argue that this claim is not sufficiently independent. At the hearing, the Court inquired of Plaintiff on the costs it has accrued thus far in defending the litigation. Counsel gave a good faith estimate that such fees as of end of the October were at or just past $75,000, and with litigation ongoing, including imminent depositions of Defendants in the underlying action, counsel proffered that the value at this time is in excess of $75,000. Therefore, the Court finds that the amount in controversy for the recoupment claim meets the jurisdictional threshold. The Court thus has subject-matter jurisdiction over the claim.

       Defendants then argue that the recoupment claim is dependent upon the declaratory claims in this action. Defendants rely on Buss, which states that under California law, an insurer "may not seek reimbursement for defense costs" when the claims were "at least potentially covered," instead, the right attached only to claims, "not even potentially covered." Buss v. Super. Ct., 16 Cal. 4th 35, 47-48, 939 P.2d 766, 775-77 (Cal. 1997). Yet, Buss stands for the proposition that in an action that contains some claims that might be covered and some claims that are not covered under a policy, an insurer may not seek reimbursement of costs of claims that *might be* covered because the course of litigation will settle the disputed coverage, as well as "[w]ithout a right of reimbursement, an insurer might be tempted to refuse to defend an action in any part—especially an action with many claims that are not even potentially covered and only a

few that are—lest the insurer give, and the insured get, more than they agreed." Id. at 52. Here, Plaintiff seeks declaration of whether it has a duty to defend and then seek costs based on its defense. Buss does not otherwise provide guidance on the 'dependency' of a claim, and therefore, it is not persuasive.

Defendants also rely upon Employers Reinsurance Corp. v. Karussos, 65 F.3d 796, 801 (9th Cir. 1995), overruled on other grounds by Dizol, 133 F.3d at 1220. In Karussos, the Ninth Circuit reaffirmed its position that federal courts should

> 'decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court' unless there are 'circumstances present to warrant an exception to that rule.'

Id. at 798, quoting American Nat. Fire Ins. Co. v. Hungerford, 53 F.3d 1012, 1019 (9th Cir. 1995), overruled on other grounds by Dizol, 133 F.3d at 1220. The Court is unpersuaded by Karussos because, as discussed further below, there is no parallel proceeding in state court. Rather, the state-court action is between the estate of the decedent and Defendants for a sole claim of negligence. Here, Plaintiff is an insurance company, Defendants are policy holders, and Plaintiff seeks declaratory relief and damages based on the relevant policy. Therefore, Karussos is not persuasive insofar as Defendants assert it to be.

On the other hand, Plaintiff has provided a case that the Court finds persuasive. In Seneca Insurance Company, Inc v. Strange Land, Inc., the issue of whether to utilize Billhard-Dizol or Colorado River was directly before the Ninth Circuit. 862 F.3d 835, 840 (9th Cir. 2017). The Court observed that while the plaintiff had stylized its complaint as "an action for declaratory judgment pursuant to 28 U.S.C. section 2201 and 28 U.S.C. section 2202, to determine the rights and duties," in the prayer for relief, the plaintiff sought, inter alia, "damages, in an amount exceeding $75,000, for recoupment of monies paid to defendant on the first property claim." Id. at 840-41. The Court had no reservation, based on the legal relief sought, that Colorado River applied. Id. at 841. Though not an exact equivalency, the Court observes that Ninth Circuit clearly did not look to how the plaintiff had pleaded the case but as to what it sought for relief. Taking Plaintiff's counsel's good faith estimate that at least over $75,000 in

1 costs have been accrued, of which the recoupment of is a legal remedy, and thus, the Court finds
2 the recoupment claim to be an independent claim.[4]

3       On balance, the Court finds that the recoupment claim is sufficiently independent, and
4 therefore, the legal standard held in Colorado River applies to this case.

5       **B.**    **Application of Colorado River**

6       "Generally, as between state and federal courts, the rule is that 'the pendency of an action
7 in the state court is no bar to proceedings concerning the same matter in the Federal court having
8 jurisdiction.'" Colorado River, 424 U.S. at 817, quoting McLellan v. Carland, 217 U.S. 268, 282
9 (1910). "However, the Supreme Court has identified several instances in which it is appropriate
10 for a federal court to abstain from exercising its jurisdiction." Ernest Bock, 76 F.4th at 835-36,
11 citing Colorado River, 424 U.S. at 813-17 (discussing traditional abstention doctrines). In
12 Colorado River, "the Supreme Court recognized that in 'exceptional circumstances, . . .
13 considerations of wise judicial administration, giving regard to conservation of judicial resources
14 and comprehensive disposition of litigation' can support a stay of federal litigation in favor of
15 parallel state proceedings." Id. at 836 (cleaned up), quoting Colorado River, 424 U.S. at 813,
16 817.

17       Colorado River stays are different from traditional abstention doctrines. "While
18 traditional forms of abstention rest on 'considerations of proper constitutional adjudication and
19 regard for federal-state relations,' Colorado River stays are based on administrative concerns and
20 prioritize efficient "disposition of litigation' through the wise deployment of 'judicial
21 resources.'" Id., quoting Colorado River, 424 U.S. at 817. Thus, the Ninth Circuit has
22 "recognized that 'Colorado River is not an abstention doctrine, though it shares the qualities of

---

[4] Much of Plaintiff's other offered precedent appears to be restatements of the application of the legal principles outlined above in various contexts. See Ernest Bock, LLC v. Steelman, 76 F.4th 827, 832 (9th Cir. 2023) (stay relying on the Declaratory Judgment Act not implicated); Vasquez v. Rackauckas, 734 F.3d 1025, 1040 (9th Cir. 2013) (noting that specific performance of a contract is an independent claim); Travelers Indemnity Company of Connecticut v. Muhlhauser Steel, Inc., No. 2:24-cv-01913-CV (ADSx), 2025 WL 2427776, at *2 (C.D. Cal. July 25, 2025) (deciding whether Colorado River or Landis v. N. Am. Co., 299 U.S. 248 (1936) applies, not whether a stay is warranted pursuant to the Declaratory Judgment Act and Brillhart); Associated Industries Insurance Company, Inc. v. Bay Area Drainage, Inc., No. 24-cv-06745-HSG, 2025 WL 2263682, at *2 (N.D. Cal. July 30, 2025) (noting that the defendant's motion to stay would lose under either Brillhart or Colorado River (or Landis) and denying the motion without expressly deciding which test applied).

one.'" Id., quoting United States v. State Water Res. Control Bd., 988 F.3d 1194, 1202 (9th Cir. 2021). But no matter how characterized, a stay of federal litigation in favor of state court proceedings "is the exception, not the rule." Colorado River, 424 U.S. at 813. "Only the clearest of justifications will warrant" a stay, id. at 819, and the circumstances justifying a stay are "exceedingly rare," Smith v. Central Ariz. Water Conservation Dist., 418 F.3d 1028, 1033 (9th Cir. 2005).

Federal courts in the Ninth Circuit weigh eight factors to determine whether a Colorado River stay is justified:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

R.R. Street & Co. Inc. v. Transport Ins. Co., 656 F.3d 966, 978 (9th Cir. 2011).

"The factors are not a 'mechanical checklist.'" Ernest Bock, 76 F.4th at 836, quoting State Water Res. Control Bd., 988 F.3d at 1203. Rather, court are to apply the factors "in a pragmatic, flexible manner with a view to the realities of the case at hand. The weight to be given to any one factor may vary greatly from case to case." Id., quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16, 21. "Some factors may not apply in some cases," but in other cases, "a single factor may decide whether a stay is permissible." Id. (cleaned up). "The underlying principle guiding this review is a strong presumption against federal abstention." Seneca, 862 F.3d at 842. "Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one." Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1369 (9th Cir. 1990).

**1.    Property at Stake**

Neither the state court proceeding nor the federal proceeding implicate any relevant property. The underlying action seeks damages based on a negligence claim; the action here seeks declaratory relief as well as recoupment of costs in defending an alleged insured.

Therefore, this factor is not relevant.  See Seneca, 862 F.3d at 842.

### 2. Inconvenience of the Federal Forum

The underlying action is in California Superior Court, Madera County.  The instant action is in the Eastern District of California, Fresno Division.  Neither party has claimed that the federal forum is an inconvenience (indeed, both parties appeared in person at the hearing on the motion to stay).  The Court then considers this factor to not be relevant.  See Madonna, 914 F.2d at 1368

### 3. Avoid Piecemeal Litigation

"A substantial factor in the Colorado River analysis is whether there are special concerns associated with resolving the issues in a piecemeal fashion via parallel proceedings."  Seneca, 862 F.3d at 842.  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."  Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988).  "A general preference for avoiding piecemeal litigation is insufficient to warrant abstention, however."  Seneca, 862 F.3d at 842.  Indeed, "Colorado River itself involved multi-state regulation of water rights in the Southwest, where water remains scarce, such that inconsistent dispositions of those rights could trigger further litigation."  Id., citing Colorado River, 424 U.S. at 819-20.  A movant should bring to the court's attention any "special or important rationale or legislative preference for resolving these issues in a single proceeding."  Id. at 843.  In other words, "[a] correct evaluation of this factor involves considering whether exceptional circumstances exist which justify special concern about piecemeal litigation."  Madonna, 914 F.2 at 1369.

This factor weights against granting a stay because Defendants have not identified exceptional circumstances that exist which justify a special concern about piecemeal litigation. Defendants' lead case in support is Montanore Minerals Corporation v. Bakie, 867 F.3d 1160 (9th Cir. 2017); (see ECF No. 20, pp. 7-8.)  In Montanore, "the state court considered the validity of the Subject Claims, while the federal court considered condemnation of property interests in the Subject Claims."  Id. at 1167.  The Ninth Circuit observed that the plaintiff's "decision to file two separate actions in two different courts resulted in piecemeal litigation of its singular goal

(that is, extinguishing [the d]efendants' claimed rights in the Subject Claims)." Id. The Court discussed that "[i]t did not promote conservation of judicial resources and comprehensive disposition of litigation, to have a federal court adjudicate rights that [were] implicated in a vastly more comprehensive state action." Id. (internal quotation marks and citations omitted). By contrast, the underlying litigation here is not a vastly more comprehensive state action but one for a negligence claim—the insurance policy itself is not at issue. Moreover, the plaintiff in Montanore has a singular goal of to extinguish the defendants' claimed rights to certain claims. Meanwhile, in the underlying litigation, the plaintiff is the estate of the decedent that seeks to vindicate rights relating to an alleged wrongful death. Here, Plaintiff is an insurance company seeking the Court to make declarations as to certain coverage the insurance policy provides. Accordingly, Montanore is not persuasive.

Rather, the Court agrees with Plaintiff that this case is closer to Madonna. In Madonna, the Ninth Circuit observed that the "case involve[d] ordinary contract and tort issues and [was] thus unlike Colorado River where important real property rights were at stake and where there was a substantial danger of inconsistent judgments." 914 F.2d at 1369. The same is true here. Moreover, in Madonna, the Court noted that there was "no 'vastly more comprehensive' state action that can adjudicate the rights of many parties or the disposition of much property." Id. The same is also true here. And while Defendants have argued of the potential discrepancy a holding in this case might create in the underlying action, the Court is not persuaded that there is a meaningful risk of conflicting rulings or duplicative litigation because the state court action will decide only the estate of the decedent's tort claim against Defendants, while this federal action will address only the insurance coverage issues under Plaintiff's policy. See Seneca, 862 F.3d at 842.

In sum, the Court finds that Defendants have not provided an argument that "this dispute evinces a special or important rationale or legislative preference for resolving these issues in a single proceeding." Id. at 843. Therefore, this factor counsels against a stay.

**4. The Order in Which Forums Obtained Jurisdiction**

"In determining the order in which the state and federal courts obtained jurisdiction,

district courts are instructed not simply to compare filing dates, but to analyze the progress made in each case 'in a pragmatic, flexible manner with a view to the realities of the case at hand.'" Seneca, 862 F.3d at 843, quoting Cone Mem'l Hosp., 460 U.S. at 21. The realities of the case at hand, as Plaintiff observes, is that the federal action seeks declaratory relief and costs associated with defending an insurance policy. Meanwhile, the state-court proceeding implicates only a negligence claim between the estate of the decedent and Defendants. Though there is the potential for overlap of issues and the state-court proceeding is slated for trial in April 2026, the two cases seek fundamentally different forms of relief, and the Court doubts whether it can make any material finding regarding the progress made in the state-court action and its import to the federal action. Because "[a]ny doubt as to whether a factor exists should be resolved against a stay, not in favor of one," Madonna, 914 F.2d at 1369, the Court finds this factor weighs against a stay.

**5. Whether Federal or State Law Provides the Rule of Decision on the Merits**

The "presence of federal-law issues must always be a major consideration weighing against surrender" of jurisdiction, but "the presence of state-law issues may weigh in favor of that surrender" only "in some rare circumstances." Seneca, 862 F.3d at 844, quoting Cone Mem'l Hosp., 460 U.S. at 26. "That state law provides the rule of decision supports abstention only when the state law questions are themselves complex and difficult issues better resolved by a state court; it is not enough that a state law case is complex because it involves numerous parties or claims. Id., citing R.R. St., 656 F.3d at 980-81. Cases implicating only "routine issues of state law—misrepresentation, breach of fiduciary duty, and breach of contract—which the district court is fully capable of deciding" do not entail "rare circumstances" counseling in favor of abstention. Madonna, 914 F.2d at 1370.

Here, Plaintiff's claims do present state-law issues insofar as providing the framework for interpreting Plaintiff's insurance policy (*i.e.*, a contract). The Court finds this to be a routine issue of state law, of which the legal principles are fairly settled. Defendants' only rebuttal is that because state law provides the rule of decision, this alone warrants a stay. Of course, this is not the law of the Ninth Circuit, as outlined above. In any event, the Court agrees with Plaintiff

15

that this is not a rare circumstance favoring abstention. This factor weighs against a stay.

### 6. Adequacy of the State Forum and Parallelism of the Suits

Under Colorado River, federal courts "consider both 'whether the state court proceedings can adequately protect the rights of the federal litigants' (the 'adequacy' factor) and 'whether the state court proceedings will resolve all issues before the federal court' (the 'parallelism' factor)." Seneca, 862 F.3d at 845, citing R.R. St., 656 F.3d at 978-79. The adequacy factor looks to "whether the state court might be unable to enforce federal rights. Id., citing Cone Mem'l Hosp., 460 U.S. at 26-27; Madonna, 914 F.2d at 1370. "The parallelism factor provides that 'the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes a Colorado River stay or dismissal.'" Id., quoting R.R. St., 656 F.3d at 982; see also Cone Mem'l Hosp., 460 U.S. at 28 ("When a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all."). Though "'exact parallelism . . . is not required,' substantial similarity of claims is necessary before abstention is available." Id., quoting Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989).

In short, "the adequacy factor pertains to whether there is an impediment to the state court protecting the litigants' federal rights, while the parallelism factor considers whether the parallel proceedings address 'substantially similar' claims." Seneca, 862 F.3d at 845. "Each factor is more relevant when it counsels against abstention, because while inadequacy of the state forum or insufficient parallelism may preclude abstention, the alternatives never compel abstention." Id., citing Cone Mem'l Hosp., 460 U.S. at 25-26.

Regarding adequacy, Defendants essentially argue that the underlying action will resolve all issues before this Court, (ECF No. 20, p. 9), which in reality speaks to the issue of parallelism. Defendants do not otherwise address how the state court proceeding could adequately protect Plaintiff's federal rights. On the other hand, Plaintiff argues that the underlying action has nothing to do with the rights and obligations of Plaintiff and Defendants

16

under the terms of the policy and Plaintiff's right of recoupment of costs. (ECF No. 28, p. 22.) The Court thus doubts whether Plaintiff's rights are truly implicated in any way in the underlying litigation, and it cannot be certain then that the underlying litigation can protect any potential federal right. Because "[a]ny doubt as to whether a factor exists should be resolved against a stay, not in favor of one," Madonna, 914 F.2d at 1369, the Court finds the adequacy factor weighs against a stay.

Regarding parallelism, Defendants begin by observing that exact parallelism is not required. Instead, the parallelism factor can be met when the proceedings are substantially similar. (ECF No. 20, p. 10.) Defendants note that they are the defendants in both the underlying action and the instant federal action. Defendants then hang their hat on their contention that the underlying action will require a factfinder to determine the relationship between the decedent and Defendants, a relationship Defendants argue is at the heart of Plaintiff's case here. (Id. at pp. 10-11.) Plaintiff notes again that the rights it seeks to enforce here are separate and apart from the rights of estate of the decedent below. (ECF No. 18, p. 22.) At the hearing, the Court asked both parties to explain what would happen should the estate of the decedent win or lose in the underlying action. Plaintiff offered that no matter what happened in the underlying action, it would still seek declaratory relief (based on the terms of its policy), and the recoupment claim in federal court. Defendants responded that if they lost in the underlying action, the only issue before the Court would be the recoupment claim and only if the parties could not agree to a sum out of court. Even taking Defendants' best position, it does not appear that the underlying litigation would effectively *resolve* all issues in the federal action. The mere fact that the parties *could* stipulate to a claim does not mean that the underlying action actually resolved all issues before this Court. Therefore, there exists a substantial doubt as to whether the state proceedings will resolve the federal action, and therefore the parallelism factor precludes a stay under Colorado River.[5]

///

---

[5] The Court notes that the adequacy and parallelism factors alone in this case demonstrate that a stay is not warranted under Colorado River.

17

### 7. Desire to Avoid Forum Shopping

When evaluating forum shopping under Colorado River, "[federal courts] consider whether either party improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding." Seneca, 862 F.3d at 846. It typically does not constitute forum shopping where a party "acted within his rights in filing a suit in the forum of his choice," Madonna, 914 F.2d at 1371, even where "[t]he chronology of events suggests that both parties took a somewhat opportunistic approach to th[e] litigation." R.R. St., 656 F.3d at 981.

Defendants argue that Plaintiff "perceived a tactical advantage from litigating in a federal forum rather than state court." (ECF No. 20, p. 10.) Though Defendants raise the curious argument that this Court might not employ the substantive law of California, the Court is not persuaded. (ECF No. 15-1, pp. 12-13.) Rather it seems that Defendants' better argument is that that California courts have greater discretion in employing stays in insurance cases, and by seeking a federal forum, Plaintiff is somehow taking advantage of that. (See id.) Again, the Court is not persuaded. Even assuming either of these were true, the Court looks to whether Plaintiff *improperly* sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding. This is the original proceeding Plaintiff brought, and Defendants have not demonstrated that Plaintiff has *improperly* sought more favorable rules. See R.R. St., 656 F.3d at 981.

Therefore, this factor does not warrant a stay.

In balancing all the above factors, the Court finds that a stay under Colorado River is not warranted, and the Court will deny the motion for a stay.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.

## CONCLUSION AND ORDER

For the forgoing reasons, Defendants' motion to stay (ECF No. 15) is DENIED.

IT IS SO ORDERED.

Dated: __**November 21, 2025**__  

STANLEY A. BOONE
United States Magistrate Judge